Citation Nr: 1542419 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 10-28 877 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Atlanta, Georgia


THE ISSUE

Entitlement to service connection for a skin disability, including status post lipoma excision of the left shoulder and chloracne, to include as due to exposure to herbicides.



REPRESENTATION

Appellant represented by: Kenneth LaVan, Attorney



ATTORNEY FOR THE BOARD

J. Andrew Ahlberg, Counsel


INTRODUCTION

The Veteran served on active duty from August 1967 to August 1969. 

This appeal to the Board of Veterans' Appeals (Board) arose from a July 2008 rating decision in which the RO in Huntington, West Virginia, inter alia, denied service connection for skin disabilities, to include lesions on the head, face, and left shoulder. In August 2008, the Veteran filed a notice of disagreement (NOD) with the denial with respect to the decision addressing the "left shoulder" as stated therein. In May 2010, the RO in Atlanta, Georgia issued a statement of the case (SOC) addressing the issue of entitlement to service connection for, as stated therein, status post lipoma excision, left shoulder as a result of exposure to herbicides. 

In early August 2009, a NOD with respect to the denial of service connection for "dermatitis" was received on behalf of the Veteran. [By application of the "mailbox rule" at 38 C.F.R. § 20.305 (2015), this NOD was timely with respect to the July 2008 rating decision.] In September 2011, a SOC was completed addressing the claim for service connection for a skin disability listed therein as "dermatitis, chloracne, to include lesions on head and face, left shoulder as a result of exposure to herbicides." A substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) with respect to this issue was received in October 2011. 

In January 2013, the Veteran testified during a Board video-conference hearing before the undersigned Veterans Law Judge.

In addition to the paper claims file, the Veteran records stored in the Virtual Benefits Management System (VBMS) and Virtual VA (VVA) paperless, electronic claims processing systems. The VVA file contains the transcript of the January 2013 hearing. 

In February 2014, the Board denied the Veteran's claim for service connection for a skin disability as characterized on the title page. At that time, the Board also remanded claims for service connection for hypertension and for peripheral neuropathy, as well as a claim for an initial rating in excess of 10 percent for PTSD, for further development.

The Veteran appealed the Board's February 2014 denial of the claim for service connection for a skin disability to the United States Court of Appeals for Veterans Claims (Court). In May 2015, the Court granted a Joint Motion for Partial Remand (Joint Motion) that vacated the Board's February 2014 denial of the claim for service connection for a skin disability, and remanded the claim to the Board for compliance with instructions provided in the Joint Motion. (The documents relevant to this litigation are contained in the VBMS file). 

As the development and adjudication with respect to the remanded issues has not been completed, the only matter currently before the Board for consideration is the claim for service connection for a skin disability listed on the title page. For reasons expressed below, that claim is being remanded to the RO. VA will notify the Veteran when further action, on his part, is required.


REMAND

In light of points raised in the Joint Motion and the Board's review of the claims file, the Board finds that further action in this appeal is warranted.

In the Joint Motion, the parties found that the Board, in concluding that there was "no credible lay or medical evidence of a current disability, or persistent or recurrent symptoms of a disability, associated with skin conditions claimed to be the result of service since or proximate to the time that [the Veteran] filed his claim for service connection in November 2007," did not adequately address VA problem lists printed in September 2011 and April 2014 that documented "Dermatitis NOS" as one the Veteran's medical problems. The parties also found fault with the Board's determination that the Veteran's service treatment records (STRs) were " negative for any of the skin conditions for which service connection is claimed," arguing as follows: 

But Appellant was treated in the dermatology clinic on a few occasions and, in some instances, for lesions. See [STRs dated] November 29, 1967, and August 29, 1968. Many of these records are difficult to understand and, while some of them indicate that the lesions being treated were in connection with a possible venereal disease, not all of them provide this type of detail and some of them do not appear to be readily legible. In particular, a service record dated on July 29, 1969, from the dermatology clinic is unclear as to what Appellant was being treated for and any potential diagnoses. The Board did not discuss these service medical records in denying Appellant's claim. On remand, the Board should review these service medical records to determine whether any of them are potentially favorable to Appellant's claim. 

The parties also directed the Board to discuss whether a VA examination or medical opinion is warranted. 

Given the concerns raised in the Joint Motion, the Board finds that a VA examination to obtain medical opinion addressing the claim for service connection for a skin disability should be arranged. See 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. 3.159 § (c)(4) (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The Veteran is hereby notified that failure to report to the scheduled examination, without good cause, may result in the denial of the claim. See 38 C.F.R. § 3.655 (2015). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. 

Prior to arranging for the Veteran to undergo examination, to ensure that all due process requirements are met, and the record is complete, the RO should obtain and associate with the claims file any outstanding, pertinent records, to include any outstanding VA evaluation and/or treatment records.

The RO should also afford the Veteran opportunity to provide information and/or evidence pertinent to the claim being remanded, explaining that he has a full one-year period for response. See 38 U.S.C.A. § 5103(b)(1) (West 2002); but see also 38 U.S.C.A. § 5103(b)(3) (West Supp. 2012) (amending the relevant statute to clarify that VA may make a decision on a claim before the expiration of the one-year notice period). The RO should specifically request that the Veteran provide, or provide appropriate authorization for it to obtain, any outstanding, pertinent private (non-VA) medical records. 

Thereafter, the RO should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2015).

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA).. See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). However, identification of specific actions requested on remand does not relieve the RO of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the RO should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the matter remanded herein. 

Accordingly, this matter is hereby REMANDED for the following action:

1. Obtain all outstanding, pertinent records of VA evaluation and/or treatment of the Veteran. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with respect to requesting records from Federal facilities. All records/responses received should be associated with the claims file.

2. Send to the Veteran and his attorney a letter requesting that the Veteran provide sufficient information, and if necessary, authorization, to obtain any additional evidence pertinent to the claim for service connection for skin disability. Specifically request that the Veteran provide, or provide appropriate authorization to obtain, any outstanding, pertinent, private (non-VA) medical records.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claims within the one-year period).

3. If the Veteran responds, assist him in obtaining any additional evidence identified by following the current procedures set forth in 38 C.F.R. § 3.159. All records and responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo VA examination, by an appropriate physician, to address the claim for service connection for a skin disability. 

The contents of the entire claims file (paper and electronic), to include a complete copy of the REMAND, must be made available to the examiner, and the examination report should include discussion of the Veteran's documented medical history and assertions.

Following a physical examination of the Veteran, and review of the claims file, the examiner should provide an opinion, consistent with sound medical judgment, as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that any skin disability manifested since the Veteran filed his claim in November 2007 had its onset in service or is otherwise medically related to service-to include skin problems experienced therein and/or his presumed exposure to herbicides.. 

In addressing the above, the examiner must consider and discuss all pertinent medical and other objective evidence of record-to particularly include all the STRs referenced in the Joint Motion (clipped, in green, inside the envelope containing the STRs); the post service problem lists referenced in the Joint Motion; and all assertions as to the nature, onset, and continuity of all relevant symptomatology from service to the present. The examiner should not base a negative opinion solely on the lack of sufficient evidence of in-service skin disability. 

All examination findings, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

5. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall v. West, 11 Vet. App. 268 (1998).

6 After completing the requested actions, and any additional notification and/or development deemed warranted, adjudicate the claim for service connection for a skin disability in light of all pertinent evidence (to include all that added to the record since the last adjudication of the claim) and legal authority, to include the regulatory presumptions pertaining to exposure to herbicides. 

8. If the claim for service connection for a skin disability remains denied, furnish to the Veteran and his attorney an appropriate supplemental SOC that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the claim for service connection for a skin disability should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the appeal. 38 C.F.R. § 20.1100(b) (2014).